**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

BROOKS JANSEN                                                                                                  PLAINTIFF

v.                                               No.  4:13CV00606 JLH

MICHAEL WEKERLE                                                                                          DEFENDANT

**OPINION AND ORDER**

Brooks Jansen alleges that he was injured while working as a valet at the Capital Hotel in Little Rock, Arkansas, when, as a part of a "drunken escapade," Michael Wekerle grabbed, twisted, and pulled his left arm and then held on and bent over as if to flip Jansen over his shoulder.  Jansen seeks punitive damages, as well as compensatory damages, and during discovery has sought financial information from Wekerle relative to the punitive damage claim.  Arkansas law provides that a plaintiff must present a prima facie case of entitlement to punitive damages before being entitled to obtain the defendant's financial records.  *Wortman v. Shipman*, 293 Ark. 253, 260, 737 S.W.2d 438, 442 (1987).  Wekerle has refused to provide the financial information, arguing that Wekerle has not made a prima facie case of entitlement to punitive damages.

The parties have now filed cross motions for partial summary judgment on that issue.  While Jansen entitles his motion as a motion for partial summary judgment on the issue of punitive damages, the Court will construe it, instead, as a motion for partial summary judgment on the issue of whether he has made a prima facie case of entitlement to punitive damages, i.e., whether he has presented sufficient evidence to present a case of punitive damages to the jury.  In contrast, Wekerle's motion is properly styled as a motion for partial summary judgment on the issue of punitive damages.  In other words, Wekerle contends that there is no genuine issue of material fact and that the issue of punitive damages should not be submitted to the jury.

A court should grant summary judgment if the evidence demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving party bears the initial burden of demonstrating the absence of a genuine dispute for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If the moving party meets that burden, the nonmoving party must come forward with specific facts that establish a genuine dispute of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). A genuine dispute of material fact is presented only if the evidence is sufficient to allow a reasonable jury to return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). The court must view the evidence in the light most favorable to the nonmoving party and must give that party the benefit of all reasonable inferences that can be drawn from the record. *Spencer v. Jackson Cnty. Mo.*, 738 F.3d 907, 911 (8th Cir. 2013). If the nonmoving party fails to present evidence sufficient to establish an essential element of a claim on which that party bears the burden of proof, then the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322-23, 106 S. Ct. at 2552.

In Arkansas:

> In order to recover punitive damages from a defendant, a plaintiff has the burden of proving that the defendant is liable for compensatory damages and that either or both of the following aggravating factors were present and related to the injury for which compensatory damages were awarded:
>
> (1)   The defendant knew or ought to have known, in light of the surrounding circumstances, that his or her conduct would naturally and probably result in injury or damage and that he or she continued the conduct with malice or in reckless disregard of the consequences, from which malice may be inferred; or

>   (2)     The defendant intentionally pursued a course of conduct for the purpose of causing injury or damage.

Ark. Code Ann. § 16-55-206. *See also Roeder v. United States*, 2014 Ark. 156 at *8-9, 432 S.W.3d 627, 633 (explaining that the conduct from which malice may be inferred includes reckless disregard of the consequences); *Freeman v. Anderson*, 279 Ark. 282, 286, 651 S.W.2d 450, 452 (1983) ("In order to support an award of punitive damages, the evidence must indicate the defendant acted wantonly in causing the injury or with such conscious indifference to the consequences that malice might be inferred."); *St. Louis, I.M. & S. Ry. Co. v. Dysart*, 89 Ark. 261, 269, 116 S.W. 224, 227 (1909) (punitive damages can only be awarded if the negligent party knew or had reason to believe that his act of negligence was about to inflict injury and continued the course with a conscious indifference to the consequences, from which malice may be inferred).

The only testimony in the record describing the incident between Jansen and Wekerle is that of S. Michael Parnell, Jr., who was a security officer in the Stephens Security Department[1] on the night in question. Parnell testified:

> The video clearly shows Mr. Wekerle grabbing Brooks Jansen's arm and Mr. Wekerle taking Mr. Jansen's arm and appearing to twist it as Mr. Wekerle bends over – and as Brooks stated, you can see in the video Mr. Wekerle seems to push his butt back in what appears to be an attempt to maybe throw Mr. Jansen over his shoulder or something. I'm not – I can't say what his intention was, but he got that far. He had Mr. Jansen's arm over his shoulder and he pulled it forward as he bent down and stuck his butt out.

Document #32-3 at 34.[2] Parnell is a former officer in the United States Army, was trained as an Army Ranger, and went to the Special Forces Officer qualifications course. After describing the

---

[1] Stephens Inc., owns the Capital Hotel.

[2] Parnell later testified that he was not sure whether his understanding of the incident came from the video or from Jansen. Regardless, the parties do not dispute the accuracy of Parnell's description of the incident.

incident in which Jansen was injured, Parnell testified that those moves, in his experience and training, are designed to cause injury.  Document #32-3 at 35.  In describing Wekerle's conduct during the course of the evening, Parnell described Wekerle as "increasingly agitated and hostile especially toward me" (*Id*. at 44) and said that Wekerle "came toward me in an aggressive manner."  *Id*. at 48.  Parnell also testified that based on his experience it appeared that Wekerle was under the influence of alcohol or a controlled substance or both.  *Id*. at 51.

Even without Parnell's testimony based on his military training, a reasonable person would know, as a matter of commonsense, that grabbing a stranger's arm, twisting it, and bending over in an apparent attempt to throw the stranger would naturally and probably result in injury.  Continuing such conduct would manifest a conscious disregard of the likelihood of injury.  Thus, a jury could reasonably conclude from Parnell's description of the incident that Wekerle knew or ought to have known that his conduct with Jansen would naturally and probably result in injury and that he continued the conduct in reckless disregard of the consequences, from which malice may be inferred.  Therefore, without deciding whether testimony regarding the preceding "drunken escapade" is admissible, the Court holds that Jansen has presented a prima facie case of entitlement to punitive damages and may discover information regarding Wekerle's financial condition.

Jansen's motion for partial summary judgment is GRANTED.  Document #32.  Wekerle's cross motion for summary judgment on the issue of punitive damages is DENIED.  Document #34.

IT IS SO ORDERED this 6th day of May, 2015.

*J. Leon Holmes*
_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE